Case numbers 21-3207 and 21-3280, Nathaniel Jackson v. Tim Shoop Warden. Oral argument not to exceed 30 minutes per side. Jana Bosch for the appellant. You may proceed. May it please the court, my name is Jana Bosch and I represent the warden. I'd like to reserve eight minutes for rebuttal. This case involves an appeal by the warden of an Eighth Amendment claim and a cross appeal by Jackson on judicial bias and ineffective assistance claims. The district court erred because it extended Supreme Court precedent from its original context and logic to a new context where the logic did not apply. The Supreme Court has held that when a trial court cuts off a portion of the defendant's mitigation case, that defendant is entitled to a remand for a fresh chance to present his mitigation evidence. In short, the remedy tracks with the error. But in remands that are unrelated to the presentation of mitigation evidence, the Supreme Court has never held that the defendant is entitled to a fresh chance to introduce new mitigation evidence. Nor does the logic of its cases suggest as much. Each defendant is entitled to one full and fair chance to present his mitigation evidence. On the ineffective assistance claim, Jackson's counsel below briefed no persuasive arguments for relief, so the district court was right to dismiss that claim. And his arguments that he should now have a second chance to develop that argument, run against precedent, they also pave a road to nowhere because the only argument that his counsel could raise for ineffective assistance is an attack on his counsel's reasonable strategy. And finally, for the bias claim, the Ohio Supreme Court responded to every argument that Jackson made that his sentencing judge was biased and a reasonable jurist could agree with its conclusions. So I'll start with the Eighth Amendment claim. Lockett, Eddings, and Skipper established that every defendant is entitled to one full and fair chance to present any mitigation evidence that he would like that he thinks might persuade a sentencer that he should receive a life sentence rather than a death penalty. Is that the holding of the case that you have one chance? Fair enough, Judge Griffin. This precise holding is what we follow, is it not? What the Supreme Court held in Eddings and Lockett and Skipper? Yes. Right, so the holding there was the defendant had attempted to introduce mitigation evidence of some kind. Now depending on which case you're talking about, that was either kept out because the state law didn't permit it to be considered as a mitigating factor, the judge thought that they ought to exclude it as a matter of law, or in the case of the Skipper it was sort of rebuttal evidence that wasn't really related to the crime but still could be offered as an argument for a sentence less than death. So in any of those circumstances you had the defendant's full and fair chance for his mitigation case being cut off. He didn't have that full chance. And so what we can glean from those is that when you're in the mitigation evidence phase and there's an error, that infects the mitigation evidence phase. You need to start it all over again. Here we have a completely different situation. When Jackson had his mitigation evidence phase, he presented everything he wanted. Not a single scrap of evidence was kept out. Then we moved on to a middle phase where the judge considered the evidence on his own, was supposed to be drafting an opinion, writing that up for why he felt that a death sentence was appropriate, and then you move on to the third phase where you have the sentencing hearing. And that's where the judge announces his sentence, accepts an allocution from the defendant, and formally enters the sentence into the record. Basically the finalizing step. So when we look for where the error is here, it's in a different phase than you have in Lockett, Eddings, and Skipper. It's in this... The sentencing was wiped out. The sentencing opinion was wiped out and it was remanded to Judge Stewart for a new sentencing hearing. Correct? Right, so the sentence was vacated, yes. The sentence was vacated. So why should there not be full opportunity during that phase under Lockett, Eddings, and Skipper to present whatever, and it had been 10 years, right, between the two, to present whatever Jackson thought would be appropriate at that point in time so that there could be a complete sentencing at that point in time? Right, so ordinarily when you're dealing with a remand, you'd look for where is the point that the error occurred. And that's the point you need to rewind to that point and you need to start from there. And so when we look here, where is the error? It's in this middle phase where the judge is considering the evidence. Now we know that he made his decision and then asked the prosecutor basically to draft it according to what he wanted it to say. So that was error because there were ex parte communications. So when we rewind to that point and we start from there, there's no error in the mitigation evidence phase, so there's no reason to redo the mitigation evidence phase. But it's been 10 years, and so shouldn't there be an opportunity particularly, not to the exclusion, but particularly to show good behavior during that 10-year period so that the fear of future crimes, should there be the possibility of parole at some point, is not a real fear? I see your point there, and I can definitely agree that there would be good arguments for extending Lockett, Eddings, and Skipper to include a remand where the mitigation evidence phase didn't have any error. But there are also good arguments the other way for why it actually would create really anomalous results to extend it in that way. As we pointed out in our brief, you could have potentially co-defendants, both of whom had a fair mitigation hearing, but then one gets to redo it and the other doesn't. And neither one of them had any error related to the mitigation evidence. That seems very strange. You also have the problem where state courts like Ohio often give defendants a full, fresh look in the appeals process of whether the death penalty is appropriate. If we take Lockett, Eddings, and Skipper and extend them to say, anytime you're considering the sentence, you have to let new evidence in, which might be years later when you're on appeal, then these courts would have to come up with ways to accept evidence in their Supreme Courts or else they'd have to abandon these extra defendant protectives. Let me ask you one question, and I just want to see if you agree. I think that one of Jackson's arguments is that he never really did have a full and fair chance for the sentencing judge to consider mitigating evidence, given what happened in terms of the 2002 sentencing with the collaboration with the prosecutor's office. So he never really had that one full and fair chance. How would you respond to that argument? I could take what you're saying two ways. The one would be sort of an intermingling between the ineffective assistance of counsel claim and this claim to sort of say, well, when you look at the, you know, if you took his ineffective assistance claim on its face and then you combined it with his desire to sort of have a second try at the mitigation hearing, then when you combine those, it seems like the first, you know, scenario. Yeah, but I guess I'm also including whether the sentencing judge ever considered, ever considered the mitigation evidence so that Mr. Jackson actually had a full and fair opportunity to have this mitigation evidence. I know you say it was presented, but was it also, look, as I understand it, Eddings and Abdul-Kabir, whether the sentencer had a chance to consider the evidence. Right, exactly. And when you have a situation where, for example, in Eddings where the judge says, I can't consider that under the law, then that also violates that line of cases. We don't have that problem here. I believe all parties agree, and it's definitely described at length in the state courts, that what happened was, after the close of the mitigation evidence, when we moved into this middle phase where the judges should be considering and drafting, he had already made his decision. Everybody agrees that he said, I want to, you know, sentence him to death and I have reasons for that and I want this opinion to reflect those reasons. And then you just simply ask the prosecutor to draft those up. So I think even my friends on the other side would agree that that is where the point of the error occurred was after the decision was made. But isn't there a new error in the 2012 resentencing where Judge Stewart comes in, says, I've got things prepared, allows this very brief allocution, and then immediately reads his opinion, i.e. he hasn't really made any reference to the 2012 allocution. And Judge Stewart's new opinion is basically the same as the old opinion was, with just a little bit of new historical record put in. So there actually isn't any error there, and I'll take it one step at a time through what you said. So first, he comes in and he has already drafted a draft of the opinion. That's not an error. As I've said, sort of this middle phase where he's considering the evidence and drafting, that's entirely appropriate. He's supposed to be considering, and it's okay if he drafts an opinion right then. So that's not error. And then moving into when we get to the hearing, he doesn't consider the allocution even though he allows it. The Ohio Supreme Court did say that that was error, but they found it harmless. And at any rate, it couldn't be grounds for habeas relief because there's no federal right to allocution, even in a death penalty case. This court said that in Lawrence. And so then moving on to, I think your last piece was that he rendered an opinion which closely resembled the one that he originally had rendered with the assistance of the prosecutor. That's also not error because there's nothing unconstitutional about parties drafting a proposed opinion. The problem is when you do that in secret. That's not appropriate. And so when he, if he had had... Why didn't the taint of the first opinion, which was done in secret, carry over to the second? So the tainted part is the ex parte communication. The problem, the crux of the error is you cannot have ex parte communications with a party. That's inappropriate. And so once you do that process of, if he had done this process of everybody draft me their proposed opinion or prosecutor draft me a proposed opinion and share it with the defense before I ask for edits or I sign it, there would be no error whatsoever. So doing the process in the open does clear all of the error. There's no error left. Even if he reuses some of that same material, which for all the record reflects, accurately reflects what he independently thought from the very beginning. He's not required to change that. Can I ask you a quick, just a quick question about future dangerousness? As I understand the 2012 resentencing, the judge, Judge Stewart, says something to the effect that I'm relying on arguments from the 2002 sentencing. And in the 2002 sentencing, there was the issue of future dangerousness raised, I think. So if he's considering the 2002 sentencing, isn't he incorporating the arguments about future dangerousness in the 2012 so that he would have considered future dangerousness in 2012? Or am I on the wrong base here? There are two points I'd like you to consider. The one is, it isn't just a matter of reincorporating that argument. Because when it was made in 2002, it was about 2002. And so from that standpoint, where he hadn't really been in jail for very long for this particular offense, there was only so much. And so the prosecutor's arguments can only be so persuasive based on what they had. And so the idea of importing it and then giving him something fresh to respond to sort of includes this idea of, well, we ought to consider it re-upped. As if the judge would read it with the mindset, ah, everything the prosecutor said in 2002 holds the exact same here in 2012. And I'm not sure that that's a reasonable way to consider the way that the judge would be reviewing a 10-year-old record that he knows is a 10-year-old record. But the second part I'd point out is that none of the evidence that Jackson proffered at the re-sentencing has any bearing whatsoever on future dangerousness. You can walk through document by document. His three volumes of proffer all go to issues that were already discussed. A lot of the documents predate the very first sentencing. The documents that do post-date it are irrelevant to future dangerousness. There's nothing offered to prove his great time in prison or how he had behaved. Thank you. I'm curious. I know that your opponent is going to argue about the judicial bias aspect. And some of your comments are making me think to that issue. In particular, wouldn't Judge Stewart, at the 2012 sentencing, re-sentencing, be inclined to justify what he had done at the original 2002 sentencing? And don't we have actual statements from Judge Stewart saying that he thought he was just being sort of wrongfully slapped on the wrist by the higher Ohio courts? So, two responses to that. For one, the Supreme Court said in Latecki that it's perfectly appropriate for judges to preside over their own cases on remand. Those are always going to involve being told that they committed some sort of error. But we trust that when the jurists re-enter on remand that they're going to follow instructions and they're going to respect the authority. And so that would be one response to it. The second is, we don't have any statements from him saying, basically, spurning the statements by the higher courts. He said, the Supreme Court, I think, misunderstood what occurred, but they have made their ruling and I must abide by that. That's a very respectful thing to say. If you look at the Ohio courts proceedings about the discipline for this, they talk about how he's very forthcoming and forthright about what it was that had happened, acknowledged it, and so they just issued a public reprimand, basically. So he wasn't fighting the system. He wasn't trying to vindicate the things that he had done. He recognized that that was a problem. I think my... He said things like, I'm just correcting a few typos and things like that, which would suggest that he was, in fact, wedded to his prior opinion and really not... And, of course, we have the actual fact that he is re-issuing his prior opinion with just very few edits. Right. So I'll be honest. I don't recall the I'm fixing a few typos quotation. As far as, again, going back to how much was he required to change his opinion, the error was not in the words. The words themselves are not carrying a taint. The fact is that he did it without telling the defense that the prosecution was involved in the drafting. It is not unconstitutional for parties to draft proposed opinions. And so if judges want to adopt those verbatim, the Supreme Court has repeatedly turned down the invitation to say that that's unconstitutional. Is it constitutional for just one side to draft an opinion without the other side knowing about it? So that's ex parte communications. That's the problem, right. Well, it's unconstitutional. It's a violation of due process, is it not? So the Supreme Court precedent on this would be, I believe, that it only violates due process if the side which is not part of the communications is denied the ability to respond to the arguments. You're saying this is acceptable behavior, what the judge did? No, this is definitely not acceptable to have ex parte communications. Outrageous. He should have been disqualified from the case. He should not have been allowed to do it on remand, I think. But yeah, I find it incredible. Getting back to the first issue about the Supreme Court precedent, how do you deal with our published opinion of Davis versus Coyle, which I think is right on point. And how do you get around that case? So Davis versus Coyle leaned heavily on this idea about rebuttal. Well, that's not the holding, though. Does the holding say that you can only introduce new mitigation evidence if it goes to rebuttal? Is that the holding of Davis? I don't think it is. So as I read Davis, there's a lot of emphasis on this idea of the ability to rebut. We filed the holding of the panels of this court. Right. And is that in the holding? I don't think it is, is it? So I can't recite for you a sentence where the Davis court says our holding is. But what I can say is, looking at the context of the case, you have, and I point to the number one difference between that case. I see that with the problem of all your arguments as to the holding of what the Supreme Court says in this case or that case. You look at the factual nature of the case, and you say the broad holding of cases have to be modified based upon the facts of that case. And if the Supreme Court or our court does not limit the holding, if they issue a broad holding, we have to follow that. Whether it should have been limited or not is a different issue. But we've got to follow it till it's overturned. I mean, that's my position. Certainly, Your Honor. And I guess I just, I try to read cases respectfully in their context. And so, because I know that the. You limit the cases by their context is what you're doing. Well, I guess maybe I would say, I guess maybe I would say that perhaps there would be, perhaps maybe you have a point. And maybe I'm being a little bit too limiting with the Davis case. But what I would say is that in the AEDPA context, when you're talking about Supreme Court precedents, out of respect for the state courts, they do need to be read very precisely to their actual holdings and facts. I agree with that, too. Right. But our panel, you agree we are bound by the holding in Davis, right? Right. Exactly. And so that's why I want to present the differences between that case and this one rather than asking this court to overturn something you can't overturn. Before you run out of time, let's talk about the ineffective assistance of counsel claim, too. If we were to find in favor of Jackson on either the mitigation of evidence issue or judicial bias issue, would we need to decide the ineffective assistance of counsel issue? No, you wouldn't necessarily need to. You could state that you were pre-emerging the claim as my friends on the other side have asked you to do. I would say, though, that it's not a very difficult question. It's clearly controlled, that a litigant is bound by what their agent, the attorney, says and does. Not if there's ineffective assistance of counsel. Exactly. And it's clearly established that there's no right to effective assistance on federal habeas. But was there ineffective assistance of counsel at the mitigation phase? So you would have to think of it in the two different ineffective, it is kind of confusing because we have two ineffective stacks. But the ineffective assistance of counsel in the mitigation phase is irrelevant to whether there was ineffective assistance of counsel below in the district court here. No, I'm getting to the heart of the case, which is, was there ineffective assistance of counsel at the mitigation phase in the state court a long time ago when the counsel did not A, investigate enough, and B, the counsel relied on someone who did not know the Supreme Court case of Atkins and what constitutes intellectual disability? Well, so first of all, we know that they did do the investigation that my friends on the other side have said that they didn't because we can find those documents in the record and we've cited to them in our brief. So all those documents are there. We know that their expert, Dr. McPherson, referred to them and reviewed them because they're in her report and her testimony referred to them. So there is no... He's the one who said that you had to have an IQ below 60 and said that his IQ was 84 when in fact the records show that his IQ usually was around 70 and that Atkins uses 70 as the cutoff as opposed to 60. So she was blatantly wrong. So I'm not sure it makes much of a difference because all of his scores are arguably in the borderline range. Maybe the 70, the sources are a little mixed on whether 70 counts as borderline or mild. But at any rate, his scores are between 70 and 80 and so those are largely borderline range. Also, any clinician is going to look at not just the numbers because they're not going to always be precise. That's not the point of the test. The point is to sort of give you an idea and then you look at sort of the surrounding circumstances. When you actually dig into a school record, the intellectual disability claim becomes very difficult because the vast majority of them are referring to behavioral difficulties, which gets to the idea of this strategy. Was there ineffective strategy? Well, because of this history of behavioral difficulties, it was reasonable for counsel to say we need to pivot to explain those because those are clearly driving down his test scores. He either doesn't care or he's misbehaving and so that's where you get the ADHD discussion and whether he'd been treated for that. All these different discussions, that was his strategy because it was a very difficult mitigation case to make. The records were not in his favor. So you have Dr. McPherson. She maybe testifies to... Well, she said it was in her opinion that we consider someone to be intellectually disabled at 60 and below and then you also have these other factors. But all in all, the mitigation case was an effective strategy. It just didn't work and that doesn't make an ineffective assistance of counsel. Since I only have eight seconds left, if there are no further questions, I'll reserve the remainder of my time. Good afternoon, Your Honors. May it please the Court. My name is Adam Rusnak and I'm here today on behalf of Nathaniel Jackson. I'd like to begin today with a discussion of judicial bias because I think it sets the scene for all the claims that are before the Court today, although I'm happy to answer the Court's questions on any issue. The judicial bias claim presents a clear path that is sufficient for the Court to affirm the judgment of the District Court. The reason why the path is clear is because the Ohio Supreme Court, in considering this claim, applied a directly contrary standard. Contrary to the rule of Caperton, the Ohio Supreme Court applied a 60-year-old Ohio case that looked subjectively into questions of whether a person might have malice, ill will, or prejudgment, which is simply not the federal standard. Indeed, Caperton is clear that because of the difficulty in inquiring into a subjective viewpoint, due process is only satisfied by an objective view of psychological tendencies and human weaknesses. And in fact, the Supreme Court tells us in Caperton, the failure to consider objective standards requiring recusal is not consistent with the imperatives of due process. So it is that the Ohio Supreme Court applied a rule directly contrary to the Supreme Court's holding. And for that reason, this Court reviews the claim de novo. And on de novo review, the collection of facts that might suggest that the average judge in this position could not remain neutral are serious. We have a judge who engaged in numerous ex-party contacts with the prosecutor. And it's not the case, as the Warden's Council said, that we can pinpoint when those contacts started. Because in fact, in the disqualification proceedings that are part of the record below, Judge Stewart explained this was a long-running practice. He had regular contacts with the prosecutor ex-party secretly in all of his cases. We know that he met with them... But your opponent says, oh, he's learned his lesson. He's doing it properly now. Well, I don't... I don't think the evidence bears that out. And I think especially when looking at what we have in the second sentencing, reviewing all the facts and looking objectively at a judge in his position, I think, as you said, Judge Moore, in questions with counsel from the other side, he was under... An average judge in his position was under immense pressure to prove I did nothing wrong. And in fact, when the case... Well, first of all, before the case even comes back to him, he files an affidavit with Ohio's Chief Justice Moyer saying there's no need to recuse me. I will grant Mr. Jackson the same relief I gave Donna Roberts. I'll give her a new sentencing hearing. So then Mr. Jackson files a motion for a new trial and Judge Stewart denies it. And it has to go to the 11th District and the 11th District says, no, we really mean it. You have to go back. You have to write a completely new opinion with your own analysis of the facts and your own review of the evidence. Then we get back in 2012 and Judge Stewart begins by saying, I don't know why we're back here. I didn't do anything wrong. He says, I think the House Supreme Court misunderstood what happened or whatever. Then, when Mr. Jackson gives his second elocution, Judge Stewart says, you know, we see this sometimes and it's really disappointing when a person has these good thoughts referring to what Mr. Jackson said, but they come too late for it to matter. But of course it wasn't too late for it to matter because he could have considered the elocution in his sentencing if he was approaching the case with a fair mind, having not prejudged the case. And did Judge Stewart refer in any way to the 2012 elocution in the second sentencing opinion? No, he did not. In fact, his second sentencing opinion, so he tells them in open court, I have decided already that I'm going to sentence you to death. I have already prepared an opinion, which I think is more than just pre-drafted. His language says, I have concluded that I will be sentencing you to death. And then when the opinion comes out just an hour later, to a point you made earlier, Judge Moore, he says there in the second sentencing opinion, this is back for an administrative remand, which is not what the 11th District had said. And he makes reference to things that don't even make sense. He says, I've heard the arguments of counsel, but of course that must be referring to 2002. And he says, Mr. Jackson gave an elocution that was just one sentence, but that's also not true. That's referring to the elocution he gave in 2002. So his second sentencing opinion is so identical as to be difficult even to understand what it means, because it makes references to things that didn't happen. Is there any import to what I recall Judge Stewart making some reference in the second sentencing, the resentencing, to the arguments that counsel made in the 2002 sentence? Yes, Your Honor. I think that if we are attempting to read any sort of sense or any logic into the opinion, he must be referring to the arguments regarding Mr. Jackson's future dangerousness, as you said earlier, Judge Cole. At the first sentencing, there were extensive arguments that Mr. Jackson had planned this crime while in prison, and so he couldn't be trusted with a life sentence because he would kill again, and for this reason he had to be sentenced to death. So it appears, taking Judge Stewart at his word, that he was reconsidering that at the second sentencing. And so, in conclusion, on the bias aspect of the claim, reviewing all the facts and assessing the average judge in Judge Stewart's position under the realistic tendencies of human psychology, a judge in this case is not likely to be neutral. He had immense reason why he would want to justify that what he did the first time was not wrong, and I must disagree with my friend on the other side. This isn't the case like a normal remand. She says judges get remands all the time, maybe so, but this was a case of a public reprimand, which is not common, and the reprimand stated that this was very bad behavior on the part of the judge and completely inappropriate. So is the remedy then a new sentencing before a new judge? I know Judge Stewart has left the bench. He's since passed away, Your Honor. But he also left within weeks of issuing this, if not days. I think that's correct. So the remedy is a new sentencing? And what evidence... First tell me if that's the correct answer. That's right. Judicial bias claims are generally not subject to harmless error review, and indeed, at least as to the sentencing phase, this can't be said to be harmless. The relief requested below in the state court was a new sentencing, and that's what we would request.  So then we get to the question, what evidence should be allowed, which is basically the first issue.  Absolutely. Which brings me right to the... If we agree with Judge Gwynne's order here granting habeas as to the mitigation of evidence issue, do we have to address the judicial bias claim? No, Your Honor. Indeed, this court could resolve this appeal on any of... Just affirming, couldn't we? That's right. You could affirm on the locket claim or on the bias claim. Then how about the mitigation? Do we have to deal with that if we affirm Judge Gwynne? The ineffective assistance of counsel?  No, the court could pre-demit that claim. There's precedent for that, yes. Is that what you were requesting? Because would there not be a difference between... If there were IAC at mitigation, wouldn't you be entitled to a new mitigation hearing as opposed to a new sentencing hearing? I think... To answer your question, Your Honor, I think that the remedy that this court could order is that the issue of writ as to the sentencing phase and the state court is to craft a remedy consistent with the Constitution. Now, whether that would require the impaneling of a sentencing jury or whether that would be just to a judge turns on some matters of state law and, in fact, in Judge Gwynne's opinion, he doesn't speak to those specifics either. So I think that would be the remedy that we would ask for on any of these bases that the court might affirm the judgment of the district court. Turning then to the Lockett claim, since we're talking about it, the court could affirm on this basis as well and I think the Lockett... First, I want to emphasize, let me say, that this claim actually contains two aspects, as we've explained in our brief. One is an Eighth Amendment claim under the Lockett, Eddings, Skipper, Hitchcock, Abdul-Kabir line of cases and one is a due process claim specifically under the Skipper case. Speaking first to the Lockett claim, the rule of the Lockett line of cases is that whenever a sentencer is choosing between life and death, the defendant must be allowed to present all relevant mitigating evidence that is available. This is because, as the Supreme Court has explained, we do not want to risk imposing death when a sentencer might otherwise choose life. That rule obtains here because when Mr. Jackson was sent back for resentencing, he was under no sentence whatsoever. Indeed, lawyers for the state repeatedly argued to Judge Stewart at the resentencing, he's under no sentence whatsoever. There isn't any sentence at all. He's being held in prison right now without a sentence. So, Judge Stewart was choosing between life and death and he must consider all relevant available mitigating evidence. The warden, following the Ohio Supreme Court's logic, gets it, I think, exactly backward, which is to say the Ohio Supreme Court concluded that Mr. Jackson is asking for an extension of the law, a right to update mitigation. But that's not so. Rather, the Supreme Court's law is clear and the warden asks for a resentencing exception to the otherwise unconditional rule of Lockett, Eddings, Skipper, Hitchcock. Further, the warden repeatedly argues and has done so today that Mr. Jackson is entitled to one full and fair hearing. Now, as far as I'm aware, that phrase is an invention of the warden's, perhaps it's from something, it's not quoted as anything in the briefs, but even if one full and fair hearing were the test, Mr. Jackson didn't get that. His first sentencing hearing was not full and fair. That's the very reason his case was remanded because he did not get a fair sentencing hearing in front of a neutral and impartial judge who would consider his evidence. So the Ohio Supreme Court's conclusion with respect to the Lockett claim was contrary to the Lockett line of cases and also an unreasonable application of those cases in this case. This is classic mitigation evidence that Mr. Jackson sought to put on with documents which, on their face, establish at least a prima facie case of intellectual disability as well as powerful evidence about his upbringing that contradicts some of the testimony that came out at the first trial that suggested he didn't have that bad of a time. Well, suppose that there was no IAC claim having to do with the evidence that was presented at the mitigation stage at the trial. Would you still be able to introduce new evidence that came about between 2002 and 2012? Yes, Your Honor, for two reasons. First, the Lockett line of cases doesn't turn on there being a companion IAC claim to call into question what happened first. And second, so the rule is clear in that regard. And second, the IAC claim here really just helps to explain why this mitigating evidence is not duplicative. It is true that some of the evidence sought to be proffered appears in the record at some places in the initial sentencing. However, the IAC claim explains that none of the documents were independently requested by Mr. Jackson's counsel, his original counsel. They never hired a mitigation expert. And then the documents they did put on, they did so through an expert who gave false testimony, incorrect testimony. Her husband had scored one of the IQ tests and had gotten it wrong. She told the jury, as you pointed out earlier, Judge Moore, she told the jury it had to be 60 to be ID, which just isn't right. So it's not that there needs to be an ID claim to make this work. It's rather the ID claim helps us understand why this mitigation evidence was so relevant and so powerful. I mean, all of this evidence really goes to the reliability of sentencing him to death, which is exactly what the Lockett cases are about. He is entitled to have a reliable, individualized sentencing determination. That's what the Eighth Amendment requires. And he hasn't had a chance to have that here. So if we were to affirm on the Lockett claim, the kind of hearing that would happen, habeas was granted, we would send the case back to the district court that would send it back to the state court. They would decide whether to allow a new sentencing hearing or mitigation hearing with this new evidence. It would be in the hands of the state court. Is that right? Or tell me where I'm wrong. I think that the relief that we're requesting is that this court order a new sentencing hearing, which could involve the impaling of a sentencing jury. This court has ordered that before in other cases. And Ohio does have a mechanism to do that. A new sentencing jury? To consider the new mitigating evidence. But wouldn't they have to consider all, start from square one on mitigation then? That's right. I mean, it would be all available mitigating evidence that's relevant at the time that happens. But as I said, it may be the case that under Ohio law, a new sentencing jury isn't what he's entitled to and it's just before a new judge. But I don't think this court has to decide that question. Well, that's what the Ohio Court of Appeals ordered in this case, is it not? That their remand in this case was based upon the Supreme Court's holding in Roberts. Jackson's entitled the same relief afforded the co-defendant. Thus, the trial judge must personally review and evaluate the appropriateness of the death penalty to prepare an entirely new sentencing entry as required by revised code 2929.03F and conduct what other proceedings as required by law. Anyway, the Ohio proceeding that they referenced is that the sentencing judge on his own weighs the aggravating circumstances against any relevant mitigating evidence. And that was what the problem was that resulted in the reversal in remand. And on remand, the judge didn't do it. Instead, he just issued the same opinion that he had before that was a tainted opinion. So, I mean, what we're looking at is the posture is just for the judge to do this sentencing hearing which is separate from the penalty phase. And I guess the issue is at this hearing, he must evaluate all mitigating evidence and aggravating evidence and then come to an independent decision. I mean, I see that as the posture of the case rather than a new penalty phase. Am I wrong on that or not? I think your reading of the 11th district remand is definitely correct, Your Honor. However, I think we're a little beyond that now because once it was remanded and Judge Stewart again put on the same opinion, exhibited further evidence of bias, a new error occurred. In fact, the second sentencing hearing was wrong. If he wasn't biased and he actually allowed all the mitigation evidence to come in that they wanted, that he excluded, then there would be no error, right? Well, if he had considered the mitigating evidence... Yeah, he didn't. That's right. And, I mean, my issue is, okay, so we correct the error, send it to a new judge who evaluates all the mitigation, all the mitigation evidence. And that's what I think Doyle versus Coy says that you're not limited by the first hearing. You consider all the new evidence that they want to put in. And then the judge weighs it and then imposes a sentence. I mean, I... That's a much more limited remedy than opening up a whole new penalty phase with the jury, I think. It's certainly a more limited remedy. Well, I know, but I think we've got to... We grant habeas. We've got to give the state court some guidance here. And our... I mean, do you agree with me of the more limited habeas remedy that I'm talking about? Or... I understand your point, Your Honor. Of course. I think it's impossible to separate the bias issue from this, however. And we can't say that the bias was harmless to any part of the sentencing hearing. We know that Judge Stewart was engaged in... Okay, I'm with you on the bias. I think the judge was totally biased. And you're entitled to relief on that claim alone. But the remedy is you get a new judge. But do you also get a penalty, a new penalty phase in front of a jury or not? Well, again, I think that that might turn on questions of Ohio law. Well, no, we're deciding federal constitutional law under habeas here. Certainly, Your Honor. And I think if this court were to decide the case in the bias remedy, he's entitled to an entirely new sentencing hearing. The Supreme Court has explained that judicial bias claims... New sentencing hearing means a penalty phase too? That's right. Okay. And why is... Why was that tainted by the judge's error in this statutory way, the ultimate sentencing decision phase that he was involved in with the prosecutor? How did that taint the penalty phase? Well, I think that the collection of evidence with respect to the judge's bias or appearance of bias goes to the entirety of the sentencing phase. We know that Judge Stewart was having long-running contacts with the prosecutor in all of his cases, or most of his cases. He was having them write things. He was passing them notes. He had an interest in making sure that their opinions turned out just fine and he doesn't get reversed based on them. And I think that typically bias claims not being subject to harmless error review, we can't say, oh, his bias only infected this part of the trial and not that. And the answer is... Does he have to have a whole trial on the conviction then as well? We think the just relief here,  would just be on the sentencing phase. That was requested below. And I think we can be confident the bias wasn't harmless as to any of the sentencing. And when you say sentencing phase, I guess, are we talking about in a broader context of penalty? That's right, Your Honor. I'm sorry, people use different terminology. The mitigation phase, the sentencing phase. So that includes the... A sentencing jury, that's right. Because don't you want for your client, a jury, to decide the penalty phase? Certainly. I mean, that goes exactly to the question of the reliability of his sentence. This is powerful mitigating evidence that it would be wrong to risk that Mr. Jackson might get sentenced to death when this evidence is typically very persuasive stuff, classic mitigation evidence. And not just the three volumes of evidence, which no court has ever considered because the Ohio Supreme Court refused to look at them on its review. But also, we have 10 years of prison good behavior, which I think brings me directly to the Skipper claim that I want to talk about for just a moment. So, my concern is, is the Skipper claim, the Lockett-Eddings-Skipper claim, is that really focused on the need to be able to present to the sentencing judge developments during that 10-year period up until the new sentencing? As opposed to evidence that you want to present about intellectual disability and so forth, which you have developed more during that 10-year period? I understand your question, Your Honor, and perhaps I'm using bad terminology. I'm using Lockett as a shorthand for the mitigation evidence at sentencing, the three volumes of evidence. And that's an Eighth Amendment claim under the Lockett line of cases. When I say Skipper, perhaps a future dangerousness is a better shorthand. I mean a due process claim specifically under the Skipper case. And that refers just to the allocution evidence, the 10 years of prison good behavior, and not the three volumes. I hope that answers your question. So what do you think Judge Gwynne ordered? Judge Gwynne's opinion discusses both parts of the case, but I think the fairest reading is on the Lockett basis, the Eighth Amendment basis. So he, according to your reading of Judge Gwynne's opinion, he orders a new sentencing at which all evidence, including your three volumes of evidence, not just evidence about good behavior and future dangerousness, would come in in front of a single state court judge. Well, I don't think Judge Gwynne decided between a judge and a sentencing jury, but yes, all volumes of evidence to your question. And that's what you're asking for now. We're asking that this court affirm Judge Gwynne's judgment on any of the bases before it. But if you were correct on IAC, you would want a whole new penalty phase in front of a jury, correct? Would you even want a new guilt phase? Well, with the IAC claim, we recognize certain deficiencies in the pleading below, which is why we've suggested the court could pre-termit consideration of that claim or remand for further briefing. But we've also argued that there's sufficient evidence in the record to decide that claim, Your Honor. When we pre-termit a claim, are we saying we're just not going to decide it today? As opposed to the other option you just gave us was to remand to let the district judge decide that. But the third option is for you to give up that entirely. If we pre-termit something, we can consider it later on should this case ever come back to us, correct? For sure. So I think those are all three options. I mean, a fourth option, of course, is the court could consider the claim when the merits and grant relief on it. Or reject it. Or reject it, of course. But if this court should reach the merits of the IAC claim, that's only as to the sentencing penalty phase, not the guilt phase. So you're not asking for any relief at the guilt phase? That's correct. So lastly, to discuss the Skipper claim specifically, the Ohio Supreme Court's consideration of this claim was contrary to Skipper and an unreasonable determination of the facts. For both those reasons, this court can get out from under deference under AEDPA and consider the merits. It's contrary to Skipper because it presents materially indistinguishable facts. And it's an unreasonable determination of the facts to suggest that Mr. Jackson had no arguments to rebut. As we've already discussed, in 2002, the prosecution argued for death, denigrated Jackson's ability to live peacefully in prison, told juries they should vote for death because Jackson would kill in prison. Moreover, in the 2012 sentencing opinion, we know references these arguments of counsel. Moreover, we don't know for sure what further contacts Judge Stewart and the prosecutors had after Jackson's first sentencing in 2002 because we do know he continued to talk to them through 2003 on the Donna Roberts case. In fact, he told them on the Donna Roberts case, hey, here's the Jackson opinion, start with that, here are some other notes you can work with on that. So they continued to discuss Mr. Jackson ex parte. The point is, the 10 years of good behavior were very relevant to whether Mr. Jackson deserved a sentence less than death, especially when Mr. Skipper had only seven months. Now the Ohio Supreme Court heard this issue and under the sort of avenue of an allocution claim, it concluded that it would be harmless under the Chapman case. The allocution evidence was harmless and wouldn't have mattered. But this was an unreasonable application of Chapman, especially where in the Skipper case, the Supreme Court found it implausible that seven months wouldn't matter. And here Mr. Jackson has 10 years of good behavior. And when doing their appellate reweighing, the Ohio Supreme Court said, oh, this evidence isn't that mitigating because it was a prison killing, a prison killing planned in prison. But that gets it exactly backwards. It was exactly, it was so mitigating exactly because this involved allegation of misconduct while in prison. And here we have, his first stint in prison was just a couple years and now we have 10 years of self-improvement being a model prisoner which surely carried some weight in mitigation. For all these reasons, Your Honors, if the Court has no further questions. I just want to, I'm hesitant to revisit this issue because I just want to make sure I'm clear. If we were to affirm the District Court here, is it your argument that it would be up to the State Court to decide whether the sentencing would be before a judge only or the sort of bigger, what I consider sort of penalty phase before a jury. Is that the argument that this would be left to the decision of the State Court under Ohio law? I'm suggesting that's one way the Court could proceed. Certainly, I think this Court could give more guidance in its order, if it were to grant relief. And I think on any of the basis where this Court might affirm the District Court, there's strong arguments that Mr. Jackson is entitled to an entirely new sentencing phase. Especially where, as I mentioned before, we consider the fact that the bias tainted at least that whole portion of the case. When you say sentencing phase, are you referring to what we are thinking of as a penalty phase with starting from scratch as to what aggravating and mitigating circumstances there are? Well, I think the proof of the aggravating factors happens during the guilt phase in Ohio. And so it's just... I guess the question is when we talk about sentencing phase, does that include sort of the penalty, I guess, what I might think of as penalty phase and then from that, the judge actually imposes the sentence. I apologize for not using precise language. When I say sentencing phase, penalty phase, I refer to the entirety of the second half of the trial where mitigation evidence is put on to a jury and a jury can ask to conclude that the aggravators outweigh the mitigating circumstances beyond a reasonable doubt. And then it goes to a judge to impose sentence. Yeah, because it seems that some... I mean, courts sometimes refer to the guilt phase, sort of the penalty phase, and then sentencing phase. But I guess you can also just say that sort of the penalty and sentencing are all under a sentencing umbrella. Yes, and I'm sorry for being imprecise. No, no. I just want to make sure I'm clear. Well, what is your position as to what Ohio follows? I'm not an expert in this aspect of Ohio law, so I'm not sure that I can answer that. I think a fair assessment of the bias claim or the rule of the locket line of cases is that this evidence should be heard by a jury, but I recognize there may be arguments to the contrary. For all these reasons, we would urge the court to affirm the judgment of the district court on any of the bases discussed today. Thank you. Thank you. If I can, I'd like to make four points, and then if there's any remaining time, I'd like to discuss bias a little bit because I didn't talk about that as much in my first presentation. So first, I want to return to what Davis said. I had a little bit of time to look at Davis back at council table, and what I would point this court to is on pages 771 to 773, the Davis court refers no less than three times to the core idea of the ability to rebut. So I feel like it's appropriate and respectful of that opinion to say that it very heavily leaned on this idea of rebuttal. And then as far as how Davis conceived of its own opinion, specifically I point to a statement which appears to be the court expressing limitations where it says, although there could conceivably be some question about the relevance of such evidence, this rebuttal evidence, in the abstract, the record in this case establishes without a doubt that it was highly relevant to the single aggravating factor relied upon by the state that future dangerousness should keep Davis on death row. Was future dangerousness at issue in the original sentencing of Mr. Jackson? I think the parties did discuss it. If you look at the findings of fact and conclusion of law, why wouldn't it be very relevant at the time of the resentencing? Well, so I suppose as a first order matter, future dangerousness is not formally speaking an aggravating factor in the statute. So formally speaking, that is not going to be used to aggravate the sentence. But it would be a mitigating feature that's not likely to be future, to be dangerous in the future. Right. So Jackson wants to say, I won't be dangerous in the future. The judge is welcome to either accept or reject that. If you look at the findings of fact and conclusions of law, it really appears as though the judge didn't really reject the idea, just didn't find it particularly important in light of Jackson's extremely lengthy rap sheet and all of the things that he had done. We don't have any evidence that Judge Seward considered the question of dangerousness during this 10-year period, do we? Right. And that, of course, goes back to the Eighth Amendment claim all back again. Right. As I recall, the prosecutor made arguments in the 2002 sentencing that Mr. Jackson would present a danger in the future even if incarcerated, that he might kill again even if in prison. My read on the transcript, and I think there's room to debate it, my read on the transcript is that the much weightier, much more important piece for everyone was that Jackson was in prison when he was planning this murder, actively telling people that he had found God and that he was going to change his life. And that's just so offensive to the administration of justice that I feel like the prosecutor and the judges who were involved saw him as taking advantage of the legal system and manipulating. That, to me, is the crux. That's what really bothered the people who were involved with the sentencing. Yeah, it's sort of, you could merge that together with some future dangerousness, but I really think that that was the crux. So moving to the second point, ineffective assistance of counsel, it really truly would be revolutionary to decide that Davis has, or I'm sorry, that Jackson has the ability to redo this ineffective assistance claim. Ineffective assistance, whether someone has a Sixth Amendment right to ineffective assistance is the line that determines whether they are bound by the acts of their attorney or not. The Supreme Court said that very clearly in Coleman v. Thompson. Quote, it is not the gravity of the attorney's errors that matters. What matters is that there's no Sixth Amendment right to counsel in the district court below. So Davis cannot claim relief based on the ineffective assistance of counsel.  I'm sorry, Jackson. We started talking about the Davis case and then I started saying Davis. Right, no, but is this the first time before Judge Gwynn and then now before us that Jackson has been able to raise an IAC claim having to do with his case? So as far as the federal courts go, it's a bit of a strange procedural posture because you'll notice the docket starts in 2007 and then there's a long gap and that's because they did ask the court to sort of say the proceedings and then go back and talk about other issues and come back again. So as far as federal courts go, I believe that this would be the genesis of the ineffective assistance claim. But this is the first time. You could give a quick answer. Yes, this is the first time, right? It's not crystal clear to me, but I believe that that's the case. Yes. But obviously this was litigated in the state court as well. But if we believe that habeas has some purpose in this world, this is the time for an IAC claim to be heard. This would be the time for the habeas petition to raise the IAC claim, but that wouldn't create a right to effective assistance of counsel below. And because of that, he can't be released from the acts of his agent, which are the attorney. This is just the establishment. But you're arguing against IAC claims ever? Is that what you're saying? That because your attorney is your agent, you can't have an IAC claim any time? So the line between whether you can have one or not is whether you have a Sixth Amendment right to counsel. There's no Sixth Amendment right to counsel on habeas. No, I understand that. Sorry, I didn't mean to keep repeating something you understood. He had a right to counsel in the state court. In the state court, of course. Did he have effective assistance of counsel? That claim is in front of us, I believe, for the first time. Maybe I'm wrong. You can tell me when the district court or the Sixth Circuit had it before us for the first time. I believe this is the first time this court is addressing the IAC claim. Thank you.  Did I leave any questions hanging out? I want to make sure I didn't. Well, I guess my question, I mean, if we were to rule against you as to the mitigation issue and perhaps the biased issue, what is the habeas remedy here? We were talking with opposing counsel whether it is to have a new Ohio statutory hearing before the sentencing judge only where he or she weighs the aggravating circumstances against the mitigating evidence or whether we also have a penalty phase. What is the habeas remedy? Were you to lose? It would track the error. So if the error is the Eighth Amendment, so if the error, sorry, so if the error was the inability to present the evidence to the sentencing judge on the first remand, which would be going back to that, remember I talked about the three phases and the middle one is where the judge is considering the evidence. That would be where the original error was, so he should have been able to go back there and present to the judge the mitigating evidence. So then it would just be that resentencing like it was the first time. Actually, I was about to try to speak to a question that you asked earlier. What was the scope of the remand? And I believe that you have it right. The remand said the trial judge must personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by state law, and conduct whatever other proceedings are required by law and consistent with this opinion. So you have the review,  and re-entry. Those are all things that happen after the close of that mitigation or some people call it penalty. But the last few words you said and conduct whatever other proceedings, and you've got the language, I don't. But doesn't that open up the possibility of an evidentiary hearing in front of that new state court trial judge? So insofar as that language is ambiguous, the Ohio State Courts ratified what happened here. So it's not a case where they said do X, Y, and Z. They only did half of it and then the Ohio Courts need to vindicate. They said that what happened was appropriate. So I think that that's a reasonable interpretation of what they said. And then the last point is just harmlessness. Again, this is, at this point, he's only produced repetitive, needless evidence. And for all these reasons, we would ask this court to affirm on, sorry, reverse on the Eighth Amendment and affirm on the other claims. Thank you. Thank you both for your argument.